# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ANDREW DARIAN, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                    **NO. 17-52-JJB-EWD**

**JEFF CASHE, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 14, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

A. Darian - Certified Mail - 7004 1160 0003 2648 6468

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

ANDREW DARIAN, ET AL.                              CIVIL ACTION

VERSUS                                             NO. 17-52-JJB-EWD

JEFF CASHE, ET AL.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On January 26, 2017, Plaintiff, Andrew Darian ("Darian"), a *pro se* litigant, filed a Complaint[1] and a Supplemental Complaint[2] to initiate these proceedings. It appears the crux of Darian's complaint arises out of an interim child custody order that was issued by Judge Jeff Cashe, a Judge for the Family Court in the 21st Judicial District Court, Parish of Livingston, State of Louisiana ("21st JDC").

On January 26, 2017, Darian also filed an Application to Proceed In District Court Without Prepaying Fees or Costs (Short Form).[3] On February 23, 2017, Darian filed an Application to Proceed In District Court Without Prepaying Fees or Costs (Long Form).[4] On February 27, 2017, the undersigned issued an Order[5] granting both motions and setting a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to determine whether all or any part of this case should be dismissed as frivolous because (1) the complaint has no realistic chance of ultimate success; or (2) it has no arguable merit in terms of the arguable substance of the claims presented, both in law

---

[1] R. Doc. 1.
[2] R. Doc. 6.
[3] R. Doc. 2.
[4] R. Doc. 4.
[5] R. Doc. 5.

and in fact; or (3) beyond doubt, the plaintiff can prove no set of facts which would entitle him to relief. *See, Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

On March 6, 2017, prior to the *Spears* hearing, Darian filed the following motions: a Petition for Emergency Ex Parte Custody,[6] a Motion to Recuse Judge Jeff Cashe and Move Case to District Court Re: Andrew Darian vs. Rebecca Darian,[7] and a Motion to Disqualify Opposing Counsel Wyman Bankston,[8] which are currently pending before the Court. As a result of the *Spears* hearing held on March 29, 2017, Darian filed a Second Amended Complaint,[9] which is also before the Court.

Following a review of the record in this matter, and after conducting the *Spears* hearing, it is **RECOMMENDED** that this matter be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction and failure to state a claim.

## I.     Background

Darian's original Complaint named as defendants Judge Jeff Cashe, Lindon Bennett Magee, Wyman Bankston, Keith Friley, Windy Vaccaro, and Terrilyn Bowe.[10] According to the Complaint, Magee, Bankston, and Friley are attorneys and Vaccaro and Bowe are associated with the Louisiana Department of Child and Family Services ("DCFS"). The Complaint asserts subject matter jurisdiction based on 18 U.S.C. §§ 201, 241, 242, 245, 247; 42 U.S.C. §§ 1981, 1983, 1985, 1986; and Articles I, III, IV, V, VI, VII, and XIV of the United States Constitution and alleges that, "Judge, attorneys, and DCFS collaborated to pull off an 'A bomb' or 'silver bullet.' I have not seen my children in almost a year!!"[11] In the prayer for relief, Darian seeks, "Immediate

---

[6] R. Doc. 7.
[7] R. Doc. 8.
[8] R. Doc. 9.
[9] R. Doc. 14.
[10] R. Doc. 1.
[11] *Id.* at p. 2.

injunction with 100% custody, compensatory and punitive damages, atty fees.  TRO or ex parte, pending psych eval & treatment immediate therapy for kids.  Disciplinary actions."[12]

On the same day, Darian filed a Supplemental Complaint against Rebecca Darian, Paula Ann Philippe, Charlette Watson, and Barney Watson.[13]  The Supplemental Complaint alleges that, "These are all federal matters out of 21st JDC Jurisdiction," and asserts subject matter jurisdiction based upon, "18 U.S. Codes—Ch. 47, 373, 1001, 1201, 1951, 1959, 2255, 2258, 2259, and 2422; 42 U.S. Codes – 5106 and 13031."[14]  More specifically, Darian alleges that, "Rebecca Darian has made frivolous false charges of abuse and molestation, filed April 12th, 2016.  I have not seen my children since then.  Paula knows many of the women at DCFS."[15]  In the prayer for relief, Darian seeks, "Injunction with 100% custody restoration.  Compensatory and punitive damages, atty fees.  TRO or ex parte pending psych evals.  Disciplinary [sic]."[16]

On March 6, 2017, Darian filed the pending Petition for Emergency Ex Parte Custody (the "Petition") against Rebecca Darian, asking this Court to issue an ex parte custody order temporarily granting him sole custody of his two minor children and terminating the visitation rights of their mother, Rebecca Darian, until she is "thoroughly psychologically evaluated."[17]  Darian asserts that he is entitled to an emergency ex parte custody order "to protect the safety and well being of two minor children currently in the interim custody of their mother the defendant Rebecca Darian" because the children "are in clear and certain imminent danger of irreparable harm."[18]  Darian alleges, among other things, that Rebecca Darian has been verbally abusive toward her two children for the past four years.  In the prayer for relief, Darian asks this Court to

---

[12] *Id.*
[13] R. Doc. 6.
[14] *Id.* at p. 1.
[15] *Id.* at p. 2.
[16] *Id.*
[17] R. Doc. 7 at p. 1, ¶ 2 and p. 7.
[18] *Id.* at ¶ 2.

4

order Rebecca Darian to show cause why he should not be awarded exclusive, temporary custody of the minor children and why her visitation rights should not be terminated.

On the same day, Darian filed the pending Motion to Recuse Judge Jeff Cashe and Move Case to District Court re: Andrew Darian v. Rebecca Darian, in which Darian "moves and prays" that "judge Jeff Cashe remove and disqualify himself as judge, move to eliminate alternates in the 21st JDC, and vacate all interim orders, and that an instant motion be heard by a District Court Judge assigned to hear and try all matters in the instant case."[19] Darian alleges that Judge Cashe is "biased and prejudiced against petitioner, and biased and prejudiced against fathers seeking custody, and biased and prejudiced against children in contested custody cases,"[20] and that, "The instant motion must be heard by a judge other than Cashe or any other from the 21st who likely share defunct common practices deemed unconstitutional, inequitable, and certainly not in the best interest of the children."[21]

Also on March 6, 2017, Darian filed the pending Motion to Disqualify Opposing Counsel Wyman Bankston Re: Andrew Darian vs Rebecca Darian.[22] In this Motion, Darian seeks to disqualify Bankston from representing Rebecca Darian in the child custody proceeding currently pending in the 21st JDC based upon Bankston's alleged conflict of interest as a named defendant in this case,[23] his alleged violation of several of the Louisiana Rules of Professional Conduct regarding candor toward the tribunal, and his appearance of impropriety due to his close relationship with Judge Cashe. Darian alleges that Bankston has presented false evidence to Judge Cashe throughout the child custody proceeding and that during a March 1, 2017 hearing, Bankston

---

[19] R. Doc. 8 at p. 1.
[20] *Id.*
[21] *Id.* at p. 4.
[22] R. Doc. 9.
[23] Although Bankston was named as a defendant in the original Complaint (R. Doc. 1), Bankston was not named as a defendant in the Supplemental Complaint (R. Doc. 6).

colluded with Judge Cashe to suppress Darian's voice.[24]  In the Motion, Darian asks this Court to: (1) remove and disqualify Bankston from this case "awaiting disciplinary decision, and outcome of pending suit in higher court;" (2) order Bankston to relinquish all files, documents, communications, and any other pertinent materials to this case; and (3) order Bankston to provide Darian with "all interrogatories and discoveries requested and filed on February 14th 2017 in the 21st JDC."[25]

During the *Spears* hearing held on March 29, 2017, Darian clarified that Judge Cashe had not yet made a final custody determination, so Darian's complaints with regard to custody relate to an interim custody ruling.[26]  As set forth in greater detail in the Hearing Report and Order,[27] the undersigned asked Darian to clarify the basis for the allegations in his Complaint and Supplemental Complaint and advised Darian that federal district courts generally lack subject matter jurisdiction over domestic matters.  Darian was further advised that to the extent he seeks any damages for the actions taken by Judge Cashe in the state court proceeding, Judge Cashe is likely entitled to judicial immunity for his actions.[28]  At the *Spears* hearing, Darian was ordered to file an amended complaint that included all of Darian's allegations, which would become the operative complaint in this matter without reference to any other document previously filed into the record.  Darian was advised that the amended complaint must specify each individual intended to be made a defendant in this action and the factual basis for the claims made against each defendant.

On April 7, 2017, Darian filed a Second Amended Complaint, naming himself and his two minor children as plaintiffs[29] and naming as defendants, "State of Louisiana, 21st JDC, Sheriff

---

[24] R. Doc. 9 at p. 3.
[25] *Id.* at p. 4.
[26] R. Doc. 13 at p. 2.
[27] R. Doc. 13.
[28] *Id.* at p. 4.
[29] The fact that Darian has named his two minor children as plaintiffs does not change the Court's analysis of the claims raised in the Second Amended Complaint.  *See*, *Kiser v. Garrett*, 67 F.3d 1166, 1167 (5th Cir. 1995) (fact that

[sic], Judge Jeff Cashe, Cashe Coudrain and Sandage, Linda Magee,[30] Keith Friley, Wyman Bankston, Rebecca Darian, DCFS, Loretta Hill LCSW, Windy Vaccaro CSW-1, Marcia Daniel Dir., Barbara Mayes CWM, Candy Smith Intake Manager, Eric Hornett Undersecretary, Terrilyn Bowe & Kelli Durbin Livingston Mangers *all in their individual and official capacities*."[31]  In the Second Amended Complaint, Darian asserts that this Court has jurisdiction under 28 U.S.C. § 1331 based on 42 U.S.C. § 1983 and 28 U.S.C. § 2201 because, "All members of this Court and DCFS, in their individual and official capacities, conspired to interfere with Plaintiff's [sic] First and Fourteenth Amendment Rights under 42 U.S.C. § 1985 and § 1986.[32]  Also under 18 U.S.C. 201, 241, 242, 245, and 247."[33]  Darian seeks declaratory, injunctive, and equitable relief, including, "protection from Defendants, change of venue from the 21st JDC to a Jury Trial, and application of appropriate Civil and Criminal penalties and liabilities.  Included should be to vacate all interim judgements [sic], restore Plaintiffs' God given familial rights, and appropriate restraints for Defendants."[34]

---

a parent named the minor child as a plaintiff did not affect the court's analysis of the parent's substantive and procedural due process claims based on a claimed liberty interest in living peaceably as a family); *Schannette v. Doxey*, 2:12-CV-01416, 2013 WL 4516041, at *1-2 (W.D. La. Aug. 22, 2013) (fact that two parents brought an action individually and on behalf of their five minor children did not affect the court's analysis of the parents' substantive due process claim based on their right to the care and custody of their children).

[30] While the caption of the Second Amended Complaint names "Linda Magee" as a defendant, the remainder of the Second Amended Complaint refers to a "Lindon Magee."  *See*, R. Doc. 14 at ¶¶ 7, 24.

[31] R. Doc. 14 at p. 1 (emphasis in original).  The Second Amended Complaint clarifies that: (1) the "Sherriff" named in the caption includes the Livingston Parish Sheriff's Office and the East Baton Rouge Parish Sheriff's Office (*Id*. at ¶ 5); (2) Cashe, Coudrain & Sandage is the law firm that employs Darian's former counsel, Lindon Bennet Magee, and that, "Both are Defendants"  (*Id*. at ¶ 7); (3) Keith Friley is Darian's former counsel who allegedly withdrew without notice or consent (*Id*. at ¶ 8); and (4) Eric Horent, Barbara Mayes, Candy Smith, Terrilyn Bowe, Kelli Durbin, Marcia Daniels, and Windy Vaccaro, and Loretta Hill are DCFS employees (*Id*. at ¶¶ 10-15).

[32] Although Darian does not identify under what section the § 1985 claim is brought, Darian appears to allege a claim pursuant to either § 1985(2) or § 1985(3).  While § 1985(1) prohibits conspiracies to prevent an officer from performing his duties, § 1985(2) prohibits conspiracies to deny a person access to state or federal courts and § 1985(3) prohibits conspiracies to deprive a person or class of persons of the equal protection of the laws.  *See*, *Plaisance v. Reese*, 353 F. Supp. 2d 735, 738 n.6 (E.D. La. 2004).  Section 1986 provides an action for neglecting to prevent a conspiracy under § 1985.  42 U.S.C. § 1986.

[33] R. Doc. 14 at ¶ 2.  Plaintiff also asserts that, "Rebecca Darian will face Criminal Perjury Charges under 18 U.S.C. § 1621, § 1622, § 1623, and 28 U.S.C. § 1746, as well as Malicious Defamation Charges, and Criminal Abuse, Neglect, and Molestation of minor Plaintiffs."  *Id*.

[34] R. Doc. 14 at ¶ 2.

## II.    Law and Analysis

Pursuant to the provisions of 28 U.S.C. § 1915(e), this Court is authorized to dismiss an action brought *in forma pauperis* if satisfied that the action is frivolous, malicious, or fails to state a claim upon which relief may be granted. *Cf., Green v. McKaskle*, 788 F.2d 1116 (5th Cir. 1986). An *in forma pauperis* suit is properly dismissed as frivolous if the claim lacks an arguable basis either in fact or in law. *Denton v. Hernandez*, 504 U.S. 25, 31, 112 S.Ct. 17281733, 118 L.Ed.2d 340 (1992) (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989)); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995). Similarly, a court may dismiss *sua sponte* an *in forma pauperis* complaint which, while not technically frivolous, fails to state a claim upon which relief can be granted under either 28 U.S.C. § 1915(e)(2)(B) or Fed. R. Civ. P. 12(b)(6). *Hamilton v. Trail*, 1:09-CV-496, 2011 WL 2971223, at *2 (E.D. Tex. June 14, 2011). In making a determination as to whether an *in forma pauperis* complaint is frivolous or fails to state a claim, a court must construe the allegations of the *pro se* litigants liberally because such litigants are held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). While a *pro se* plaintiff is held to less stringent standards than lawyers, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc*., 296 F.3d 376, 378 (5th Cir. 2002) (quoting *S. Christian Leadership Conference v. Supreme Court of State of La*., 252 F.3d 781, 786 (5th Cir. 2001)).

### A. The Court Lacks Subject Matter Jurisdiction Over Darian's Claims That Seek Review of an Interim Custody Order Issued by Judge Cashe in a Custody Proceeding Pending in the 21st JDC and Review of the Custody Proceedings.

Though not a model of clarity, a review of the Second Amended Complaint and the undersigned's discussions with Darian at the *Spears* hearing make it clear that Darian filed this

action primarily to challenge an interim child custody order issued by Judge Jeff Cashe in a custody proceeding that is currently pending in the 21st JDC, as well as the manner in which the state court proceedings were held.[35]  Darian asserts that, "Defendants . . . under color of law, deprived Plaintiff of custody or visitation, in violation of the First and Fourteenth Amendments,"[36] and that, "Defendants have established policies, procedures, precedents, and common practices that deny Plaintiffs and other parents of fundamental rights and protections by stripping one parent of physical and legal custody without a full and prompt hearing, in clear violation of the 14th Amendment under color of law."[37]  As a result of these alleged violations, Darian seeks to have all of the judgments issued in the custody proceeding "vacated as fraudulently coerced and unconstitutional, with immediate restoration of paternal care, custody, and control."[38]  At the

---

[35] Although not transcribed, the undersigned has reviewed the recording from the *Spears* hearing, during which Darian made the following statements:

> Darian: Well, what about child endangerment?  Umm, Colluding?  Umm, disregarding my complaints that I've submitted to DCFS?  Umm, biases?  All of those things, they're basically have lead to my children going through this for the last year.  I mean their rights, many of their constitutional rights have been violated as well.  They haven't been protected. (11:33:51)

> *              *              *

> Darian: His [Judge Cashe's] latest decision is to get another psych evaluator.  He will not remove those children from an, from a, a horrible nightmarish situation with their mother.  He will not even entertain it, nor will DCFS because it would be admitting that they made hasty decisions, incorrect decisions, manipulated me.  There's nobody listening to me …. Nobody's helping to take action to protect my kids. (11:35:16)

> Court: The problem is that there are procedural mechanisms that have to be followed and a custody dispute, which is, despite the fact you continue to characterize this as other things, whenever we drill down to what you're really talking about, you're really talking about a custody dispute.  You just said it now.  Nobody will take the kids away from your wife and give you custody.  If what you're really seeking is that, no federal district court can do that.  That's just not something that's within the jurisdiction of a federal district court.  That is a strictly state law matter. (11:35:51)

The time entries provided above are where these statements appear during the recording of the *Spears* hearing.
[36] R. Doc. 14 at ¶ 2.
[37] *Id.* at ¶ 17.
[38] *Id.* at p. 7, ¶ 4.

*Spears* hearing, Darian clarified that he believes his First Amendment rights were violated because he was not permitted to speak during the custody proceedings until he began representing himself and that he has not received equal protection against false allegations of child abuse that have been asserted against him in that proceeding.[39]

As an initial matter, consideration of Darian's claims seeking review of the interim custody order issued by Judge Cashe and the state custody proceedings is barred by the *Rooker-Feldman* doctrine. *See, District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co*., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). Under the firmly-established doctrine, "federal district courts lack jurisdiction to entertain collateral attacks on state court judgments." *Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir. 1994) (citations omitted). Here, it is apparent that the thrust of Darian's claims are actually a collateral attack on the validity of the orders issued by Judge Cashe in the child custody proceeding, as well as the validity of those proceedings themselves. In the Second Amended Complaint, Darian prays that, "All judgments of case 15188 [be] vacated as fraudulently coerced and unconstitutional, with immediate restoration of paternal care, custody, and control" and for, "Recusal of Judge Jeffrey Cashe and disqualification of Attorney Wyman Bankston, and a change of venue with a jury . . . ."[40] Because Darian's claims constitute collateral attacks on state court judgments, namely all of the orders issued by Judge Cashe in the state court custody proceeding, this Court lacks subject matter jurisdiction over these claims under the *Rooker-Feldman* doctrine.

The Court also lacks subject matter jurisdiction over these claims pursuant to the domestic relations exception. As discussed above, the state court action Darian seeks to appeal to this Court involves the issue of child custody. It is well-established that federal courts do not have

---

[39] R. Doc. 13 at p. 2.
[40] R. Doc. 14 at p. 7, ¶¶ 4-5.

jurisdiction to decide domestic relations disputes. *See, Ex parte Burrus*, 136 U.S. 586, 593-94, 10 S.Ct. 850, 34 L.Ed. 500 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States."); *Franks v. Smith*, 717 F.2d 183, 185 (5th Cir. 1983) ("issues of domestic relations are the province of state courts, going back to *Ex parte Burrus*."). The Fifth Circuit has held that the domestic relations exception applies to prevent federal courts from issuing or modifying "a divorce, alimony, or child custody decree." *Saloom v. Texas Dept. of Family and Child Protective Services*, 578 F. App'x 426, 429-30 (5th Cir. 2014) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 701-02, 706-07, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992)). "Thus, federal courts generally abstain from resolving cases involving intrafamily relations," such as child custody actions. *Evans v. Williamson Cty. Gov't, Tex.*, A-15-CV-436-SS, 2015 WL 4621449, at *5 (W.D. Tex. May 28, 2015); *See Congleton v. Holy Cross Child Placement Agency, Inc*., 919 F.2d 1077, 1078 (5th Cir. 1990) (as a general rule, federal courts refuse to hear domestic disputes, including child custody actions and disputes over visitation rights); *Chandler v. Commander, Army Fin. & Accounting Ctr*., 863 F.2d 13, 15 (5th Cir. 1989) (acknowledging that federal courts have traditionally abstained from domestic relations cases because of strong state interest and competence in the issues presented by such cases); *Goins v. Goins*, 777 F.2d 1059, 1062 (5th Cir. 1985) ("The state court has a strong interest in and the expertise to decide domestic issues which federal courts lack.").

The Fifth Circuit has also recognized that although issues of domestic relations are the province of state courts, "The mere fact that a claimed violation of constitutional rights arises in a domestic relations context does not bar review of those constitutional issues." *Franks*, 717 F.2d at 185 (citations omitted). However, if "it is determined that an asserted constitutional violation

has been forwarded solely for the purpose of obtaining federal jurisdiction or is wholly insubstantial and frivolous, or unless it is determined that such an asserted violation is clearly immaterial to the case, then dismissal for lack of subject matter jurisdiction is inappropriate." *Id.* at 185 (citation omitted).  Here, although Darian alleges violations of his First and Fourteenth Amendment rights, it appears that Darian asserts these constitutional violations solely as a basis for obtaining federal jurisdiction.  Darian admitted at the *Spears* hearing that the primary thrust of this suit is Judge Cashe's interim custody determination and Darian's dissatisfaction with the manner in which those proceedings were conducted.  Thus, the domestic relations exception bars this Court's review of Darian's claims that seek review of the interim custody determination made by Judge Cashe in the 21st JDC proceeding, as well as the manner in which the proceedings were held.

To the extent that Darian has alleged sufficient facts to support his claims that the Defendants violated his First and Fourteenth Amendment rights during the course of the child custody proceedings, "Constitutional questions arising in state proceedings are to be resolved by the state courts.  If a state trial court errs the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court." *Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir. 1994).  The Fifth Circuit has held that, "Judicial errors committed in state courts are for correction in the state court systems, at the head of which stands the United States Supreme Court; such errors are no business of ours." *Hale v. Harney*, 786 F.2d 688, 690-91 (5th Cir. 1986).  The Fifth Circuit has further explained that, "Insofar as these complaints about the state court or that court's decree are legally cognizable and do not represent mere grumbling, they are properly addressed to the state appellate courts, not to us.  We hold no warrant to review even final judgments of state courts, let alone those which may never take final effect because they remain subject to revision in the

state appellate system." *Id*. Here, although Darian's challenge of the state court custody proceeding and the interim custody order issued by Judge Cashe in that proceeding are framed in terms of constitutional violations, Darian's claims should be resolved by the appropriate state appellate court.[41]

Based on the foregoing, the Second Amended Complaint, which appears to have as the primary relief sought the review (and possible reversal) of an interim custody determination made by Judge Cashe in a custody matter currently pending in the 21st JDC and other actions taken by Judge Cashe in the course of that proceeding, should be dismissed for lack of subject matter jurisdiction.

**B. The Remaining Claims Should Be Dismissed For Lack of Subject Matter Jurisdiction and/or Failure to State a Claim.**

In addition to seeking review of the interim custody determination made by Judge Cashe, Darian appears to be asserting various claims against other individuals and entities based upon their participation in the custody proceeding pending in the 21st JDC, which allegedly affected the outcome of the interim custody order issued by Judge Cashe. As explained in greater detail below, however, each of these additional claims should be dismissed for lack of subject matter jurisdiction and/or failure to state a claim.

**1. Darian's Claims Against the Judges of the 21st JDC**

In the Second Amended Petition, Darian alleges that there exists, "[A]n existing sexist culture under 42 U.S.C. 1981, as prevails in the 21st JDC Family Court," and that, "All members of this Court and DCFS, in their individual and official capacities, conspired to interfere with

---

[41] Darian has represented to the undersigned that the custody determination made by Judge Cashe in the state custody proceeding is an interim custody order. *See*, R. Doc. 13 at 1-2; *See also*, R. Doc. 7at ¶ 2; R. Doc. 8 at pp. 1, 3. As such, the undersigned is not passing on whether the interim custody determination is currently appealable.

Plaintiff's First and Fourteenth Amendment Rights under 42 U.S.C. § 1985 and § 1986."[42]  Darian also claims that, "This collaboration results in an all too prevalent outcome of three weekend visitation for fathers and domiciliary custody for mothers, in almost all contested divorces,"[43] and Darian seeks relief, "on behalf of Plaintiffs and all persons who have been, or will be deprived of custody of their children without a prompt and full hearing, or deprived of other fundamental rights without due process."[44]  To the extent Darian alleges that the judges of the 21st JDC conspired to create a sexist environment that violated the constitutional rights of Darian and other fathers with child custody proceedings pending at the 21st JDC, Darian has failed to allege facts sufficient to state a claim.[45]

Although Darian does not specify which subsection of § 1985 is applicable to his claim, he appears to allege a claim pursuant to either § 1985(2) or § 1985(3).  Subsection 1985(2) makes it unlawful for two or more people to conspire to deny a person access to federal or state courts by "force, intimidation, or threat" or to conspire "for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws."  42 U.S.C. § 1985(2).  Subsection 1985(3) prohibits conspiracies to deprive a person of equal protection of the laws, which means "there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspiratorial action."  *Kush v. Rutledge*, 460 U.S. 719, 725, 103 S.Ct. 1483, 1487, 75 L.Ed.2d

---

[42] R. Doc. 14 at ¶ 2.

[43] *Id.* at ¶ 18.

[44] *Id.* at ¶ 27.

[45] Darian also seeks "Relief declaring a preponderance of the evidence 'Best Interest' Standard is unconstitutional as a basis for suspending parental rights and other fundamental rights."  R. Doc. 14 at ¶ 34.  Although Darian does not elaborate on this claim, Louisiana Civil Code article 131 provides that, "In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child."  La. Civ. Code art. 131.  To the extent that Darian asserts that the sexist bias in the 21st JDC "promotes an obvious double standard of applying a far lower standard when stripping one parent of custody in favor of another" (R. Doc. 14 at ¶ 36), Darian's request for declaratory relief with respect to the "best interest of the child" standard applied in child custody matters is subsumed in the Court's analysis of the claims asserted by Darian against the judges of the 21st JDC.

413 (1983).  The Supreme Court has held that, "Each of these portions of the statute contains language requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws."  *Id*.

Here, Darian appears to allege that he and other fathers with child custody proceedings pending at the 21st JDC are members of a protected class who have been denied access to state court and denied equal protection on account of their gender.  As an initial matter, the caption of the Second Amended Complaint makes clear that Darian is appearing as "*Pro Se* individual and father" and that Darian has named his two minor children, in their individual capacities, as plaintiffs.[46]  Darian makes no reference to appearing on behalf of other men that might be similarly situated.  *See, Burroughs v. Burroughs*, CIV. A. 97-701-GMS, 1999 WL 33220039, at *2 n.6 (D. Del. June 2, 1999), *aff'd*, 215 F.3d 1314 (3d Cir. 2000) (rejecting the notion that plaintiff's allegations evince an intent to sue as a representative of the class of men who have suffered discrimination in the Delaware Family Court based on the caption of the pleading).  Further, it appears that the purpose of Darian's assertion that he seeks relief "on behalf of all persons who have been, or will be deprived of child custody by Defendants without a prompt a full hearing,"[47] was to establish the basis for his equal protection challenge.  It seems Darian "is simply attempting to set forth the basis for his allegations of gender discrimination in violation of Section 1985."  *Burroughs*, 1999 WL 33220039, at *2 n.6. (citation omitted).  Thus, even though the Court should interpret *pro se* pleadings liberally, the Second Amended Complaint shows that Darian is not, at this time, pursuing any form of class-wide relief.  *Id*.

Insofar as Darian alleges that the judges of the 21st JDC conspired to violate Darian's right to equal protection, Darian has not addressed whether a parent in a custody proceeding can be a

---

[46] R. Doc. 14 at p. 1.
[47] R. Doc. 14 at ¶ 2.

member of a protected class for equal protection purposes on the basis of gender. *See, Fox v. County of Tulare*, 1:11-cv-0520, 2014 WL 3687735, at *13 (E.D. Ca. July 24, 2014). "While authority on this issue is admittedly sparse, district courts that have addressed the issue appear to have come to the conclusion that the classification of single parent of either gender in a custody proceeding is not a member of a protected class." *Id.*; *See, Borlawsky v. Town of Windham*, 115 F. Supp. 2d 27, 29 (D. Me. 2000) (concluding that "divorced or otherwise single women parents" is not a protected class for a § 1985(3) claim because, "Coverage of that statute . . . is limited to conspiracies based upon racial or some other class-based invidious discrimination.") (citation omitted); *Nielson v. Legacy Health Sys.*, 230 F. Supp. 2d 1206, 1211 (D. Or. 2001) (where plaintiff alleged "some form of discrimination based on gender, sexual orientation, and divorced fathers seeking custody," the court held, "[N]one of these classes is protected under § 1985."); *Humphrey v. Court of Common Pleas of York County, Pa.*, 640 F. Supp. 1239, 1243 (M.D. Penn. 1986) (dismissing plaintiff's § 1985 claim because "divorcing fathers, divorced fathers or fathers engaged in custody disputes" is not a protected class). "Given the nature of child custody disputes involving, as they most commonly do, one party of one gender opposing the other party of the other gender; the refusal of district courts to recognize gender as the basis for membership in a protected class for equal protection purposes seems logical." *Fox*, 2014 WL 3687735, at *13. Darian has not shown that as a father in child custody proceeding pending at the 21st JDC, he is a member of a protected class for equal protection purposes.

Further, Darian has not alleged specific facts showing how each of the judges of the 21st JDC conspired to deprive him of equal protection. "At a minimum, a claim under § 1985 must allege a factual basis for the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Matthews v. Int'l House of Pancakes, Inc.*,

597 F. Supp. 2d 663, 674 (E.D. La. 2009) (citing *Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir.1988)).  As such, even if gender could be considered a basis for Fourteenth Amendment protection in the context of a parental custody dispute, Darian's claim pursuant to 42 U.S.C. § 1985 would fail because he has not alleged facts supporting a conspiracy, nor has he alleged facts from which a trier of fact could infer gender-based discrimination.  *Fox*, 2014 WL 3687735, at *14.  Darian's claims against the judges of the 21st JDC for allegedly creating a "sexist culture" in child custody proceedings should, therefore, be dismissed for failure to state a claim.

### 2.  The Claims Against Rebecca Darian

In the Second Amended Complaint, Darian asserts that Rebecca Darian was "harsh and abusive toward Plaintiffs."[48]  Darian seeks to have this Court not only bring criminal charges against Rebecca Darian for perjury, defamation, child abuse and child molestation, but also conduct a jury trial on those claims and require Rebecca to see "an experienced criminal psychologist as soon as possible."[49]  Although Darian seeks to bring criminal charges against Rebecca Darian, the Second Amended Complaint was filed as a civil matter in this Court.  In addition, "There is no constitutional right to have a person criminally prosecuted."  *Carlock v. Rapides Parish Sheriff's Dept.*, 09-CV-1573, 2010 WL 537103, at *2 (W.D. La. Feb. 12, 2010) (citing *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990)).  The prosecution of criminal actions in Louisiana courts is a matter solely within the discretion of the Louisiana Attorney General and the various District Attorneys.  *Carlock*, 2010 WL 537103, at *2 (*citing* La. Code Crim. P. arts. 61 and 62).  As such, Darian's claims against Rebecca Darian should be dismissed for failure to state a claim.

---

[48] R. Doc. 14 at ¶ 20.
[49] R. Doc. 14 at ¶¶ 20, 32, and p. 7, ¶6.

### 3.  The Claims Against Judge Jeff Cashe

Darian also asserts various claims against Judge Jeff Cashe, attorneys Lindon Magee, Keith Friley and Wyman Bankston, and the law firms of Cashe Coudrain & Sandage and Bankston Duhon LLC for their involvement in the state court custody proceedings, which allegedly contributed to the outcome of the interim custody determination made by Judge Cashe.  With respect to Judge Cashe, Darian asserts that Rebecca Darian filed a petition for divorce on April 11, 2016 and, "Without any cursory scrutiny, Judge Cashe signed the ExParte [sic], then immediately revoked visitation based upon direct communications with Loretta Hill.  Plaintiff has not seen his kids in over a year.  At least six of the required Canons of the Code of Judicial Conduct were wholly ignored."[50]  Darian alleges that, "All counsel colluded to coerce by misinformation, Andrew Darian into relinquishing his parental rights without knowledge," and that Wyman Bankston, counsel for Rebecca Darian, "knowingly proceeded with this 'Silver Bullet' tactic, violating Rule 3.3 of Candor Toward the Tribunal, which supersedes client confidentiality as outlined in Rule 1.6."[51]  Darian further asserts that, "Judge Cashe and Andrew's counsel continued to mute him"[52] during the state custody proceedings, and that Darian's former counsel, Lindon Magee, recommended to Judge Cashe that Rebecca Darian be awarded domiciliary custody and that Darian be allowed to visit the children three weekends a month.  Darian also asserts that he, "was heard for the first time by Family Court as Pro Se litigant on March 1st 2017, where Judge Cashe and Wyman Bankston colluded to baffle and neutralize him without fully addressing a single item of the petition."[53]  In his prayer for relief, Darian seeks to have Judge Cashe recused

---

[50] R. Doc. 14 at ¶ 23.
[51] *Id.*
[52] The Second Amended Complaint names Linda Magee and Keith Friley, two of Darian's former counsel, as defendants, but fails to specify which attorney allegedly colluded with Judge Cashe during the custody proceedings in the 21st JDC.
[53] R. Doc. 14 at ¶ 25.

and Wyman Bankston disqualified from the custody proceeding pending in the 21st JDC, and seeks to have disciplinary charges brought against Bankston and Darian's former counsel.[54]

With respect to the allegations against Judge Cashe, although 28 U.S.C. § 1361 provides that, "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff," the statute does not provide this Court with jurisdiction or authority to compel a state judge to recuse himself from a pending proceeding.  28 U.S.C. § 1361; *Poullard v. Sharp*, CIV.A. 14-0965, 2014 WL 2208914, at *2 (W.D. La. May 28, 2014).  Thus, the Court does not have subject matter jurisdiction over Darian's claims against Judge Cashe.

Further, as the Court explained at the *Spears* hearing, even if Darian could establish that this Court has subject matter jurisdiction over his claims against Judge Cashe, to the extent that Darian seeks any damages for the actions taken by Judge Cashe in the state court proceeding, Judge Cashe is entitled to judicial immunity for his actions.  "It is well settled that a judge has absolute immunity for damages for judicial acts performed within his/her jurisdiction."  *Daniels v. Stovall*, 660 F. Supp. 301, 303 (S.D. Tex. 1987) (citing *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986)).  "The doctrine of judicial immunity extends to all acts performed by judges in their judicial capacity and is a valid defense to a civil rights action under 42 U.S.C. § 1983."  *Daniels*, 660 F. Supp. at 303 (quoting *Shean v. White*, 620 F. Supp. 1329, 1330 (N.D. Tex. 1985)).  Because Darian complains of actions taken by Judge Cashe while presiding over the state court custody proceeding and does not allege that Judge Cashe acted beyond the scope of his judicial authority, Darian's claims against Judge Cashe should be dismissed for failure to state a claim.  *See*, *Daniels*, 660 F. Supp. at 303.

---

[54] Again, Darian fails to specify whether this relief is sought against Lindon Magee or Keith Friley, who are both described as Darian's former counsel and named as defendants in this matter.

To the extent that Darian seeks injunctive relief in the form of the "reversal of all decisions" made by Judge Cashe in the state court custody proceeding[55] and "immediate restoration of paternal care, custody, and control" of his minor children,[56] Darian's claims are also barred by judicial immunity. "In the past . . . judicial officers did not enjoy absolute immunity from suits seeking injunctive relief. Relief of that nature was available under Section 1983 against state court judges acting in their judicial capacity." *Patterson v. Orleans Par. Dist. Atty. Office*, CIV.A. 06-7322, 2007 WL 5063238, at *13 (E.D. La. Apr. 16, 2007) (citing *Pulliam v. Allen*, 466 U.S. 522, 541-42, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984)). "However, the Federal Courts Improvement Act of 1996 ("FCIA") amended Section 1983 to provide that 'in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief is unavailable.'" *Patterson*, CIV.A. 06-7322, 2007 WL 5063238, at *13 (*quoting* 42 U.S.C. § 1983). Thus, judges acting in their official capacity also enjoy absolute immunity from suits for injunctive relief because the FCIA extended the doctrine of judicial immunity to injunctive relief and damages. *Torns v. Mississippi*, 3:10CV260-TSL-MTP, 2011 WL 4625660, at *2 (S.D. Miss. Aug. 26, 2011). *See also, Patterson,* CIV.A. 06-7322, 2007 WL 5063238, at *13 (collecting cases).

Insofar as Darian seeks an order from this Court directing Judge Cashe to take some action concerning the custody proceeding currently pending in the 21st JDC, "a federal court has no power to direct a state court or its judicial officers in the performance of their duties when mandamus is the only relief sought." *Patterson,* CIV.A. 06-7322, 2007 WL 5063238, at *13 (citing *In re Campbell*, 264 F.3d 730, 731 (7th Cir. 2001); *Santee v. Quinlan*, 115 F.3d 355, 356-57 (5th Cir. 1997); *Russell v. Knight*, 488 F.2d 96, 97 (5th Cir. 1973); *White v. Stricklin*, 3:02-CV-688-D, 2002

---

[55] R. Doc. 14 at ¶ 29.
[56] R. Doc. 14 at p. 7, ¶ 4.

WL 1125747, at *2 (N.D. Tex. May 23, 2002); *Norman v. Louisiana Supreme Ct.*, CIV.A. 01-2225, 2001 WL 881298, at *1 (E.D. La. Aug. 3, 2001)).  As such, this Court lacks the authority to order Judge Cashe to take a particular action in the state custody proceeding or to otherwise interfere with Judge Cashe's interim custody order.

### 4. The Claims Against Lindon Magee, Keith Friley, Wyman Bankston, Cashe Coudrain & Sandage and Bankston Duhon LLC

The Court also lacks jurisdiction or authority to disqualify Wyman Bankston from representing Rebecca Darian in the state custody proceeding.  "Disqualification of attorneys in state court proceedings is essentially a state matter and should not be subject to federal court regulation except in egregious cases." *Davis v. Stamler*, 650 F.2d 477, 480 (3d Cir. 1981).  To the extent that Darian seeks such relief, his claim to disqualify Bankston from representing Rebecca Darian in the state court proceeding should be dismissed for failure to state a claim.

Likewise, to the extent that Darian seeks to have this Court bring disciplinary actions against three attorneys, Lindon Magee, Keith Friley and Wyman Bankston, for their involvement in the state custody proceeding, those claims must be brought before the Louisiana Supreme Court, which has exclusive original jurisdiction of disciplinary proceedings against a member of the bar. *Ayo v. Simoneaux*, CIV.A. 08-963, 2008 WL 2944874, at *5 (E.D. La. July 31, 2008) (*quoting* La. Const. art. V, § 5(B)).  "Under that jurisdiction and its inherent judicial power, the supreme court has exclusive authority to regulate the practice of law." *Jarrell v. Miller*, 38,360 (La. App. 2 Cir. 9/9/04); 882 So.2d 639, 649 (quoting *O'Rourke v. Cairns*, 95-3054 (La. 11/25/96); 683 So.2d 697). *See*, *Bailey v. Johnston*, 5:12-CV-1765, 2012 WL 5207589, at *7 (W.D. La. Oct. 1, 2012) ("Disbarment in Louisiana is a function of the Louisiana Supreme Court, the Louisiana Bar Association, and the Louisiana Attorney Disciplinary Board.  This Court lacks authority to order

either the investigation or discipline of any of the attorneys named as defendants in this litigation."). Thus, Darian's claims against Magee, Friley and Bankston should be dismissed.

To the extent that Darian has filed a claim against Cashe Coudrain & Sandage and Bankston Duhon LLC, the law firms that employ Magee and Bankston, respectively, the Second Amended Complaint also fails to state a claim against these entities. While these entities are included in the list of parties named as defendants in this matter, no other reference is made to either entity in the Second Amended Complaint. Although Darian's request for relief seeks a "Refund of all monies collected in bad faith, and waiver of any unpaid balance as partial compensation for fraud, malpractice, and malfeasance" from his "former counsel,"[57] and that disciplinary actions be brought "against all defendants,"[58] such requests do not allege a factual basis for Darian's claims against Cashe Coudrain & Sandage or Bankston Duhon LLC. As such, these claims should be dismissed.

### 5.   The Claims Against DCFS and DCFS employees Eric Horent, Barbara Mayes, Candy Smith, Terrilyn Bowe, Kellie Durbin, Marcia Daniels, Windy Vaccaro and Loretta Hill

In the Second Amended Complaint, Darian attempts to assert a claim under 42 U.S.C. § 1983 by alleging, generally, that, "The Court System and individual defendants, in their official capacity deprived Plaintiffs of liberty under color of law by depriving the parent of the fundamental right to the care, custody, and control of his two minor children, without affording him even minimal procedural protections guaranteed by the United States Constitution."[59] Darian also asserts that, "All members of this Court and DCFS, in their individual and official capacities, conspired to interfere with Plaintiff's First and Fourteenth Amendment Rights under 42 U.S.C. §

---

[57] R. Doc. 14 at ¶ 33.
[58] R. Doc. 14 at p. 8, ¶ 10.
[59] R. Doc. 14 at ¶ 1.

1985 and § 1986."[60]  The only specific allegation made against any of the DCFS employees is that Loretta Hill, "Provided [a] steady stream of pretrial false evidence to Judge Cashe et al.,"[61] and that, "Without any cursory scrutiny, Judge Cashe signed the ExParte, then immediately revoked visitation based upon direct communications with Loretta Hill."[62]  With respect to DCFS, Darian asserts that he "has attempted to find relief from local officials and agencies, especially DCFS. After countless phone conversations, face to face meetings, and direct and indirect reports, Defendants refused to give equal consideration or protection.  To date, all agents have eagerly dismissed the Father as retaliatory, never once considering his validity."[63]  In the prayer for relief, Darian seeks, "Fines, penalties, and terminations of Defendants as appropriate," and that the "DCFS and involved agents . . . be disciplined appropriately for refusal to follow local and Federal laws regarding child abuse reports."[64]

### a.  Official Capacity Claims

Darian's primary complaint against DCFS and the eight DCFS employees appears to be based upon actions taken in their official capacity during the course of the state custody proceeding currently pending in the 21st JDC.  Insofar as Darian asserts claims against DCFS and eight DCFS employees in their official capacities, the Eleventh Amendment bars a state's citizens from filing suit against the state or its agencies in federal courts.  *Cozzo v. Tangipahoa Parish Council—President Government*, 279 F.3d 273, 280 (5th Cir. 2002) (citation omitted).  At least two courts in this Circuit, including this one, have held that DCFS is an arm of the state.  *See, Schannette v. Doxey*, 2:12-CV-01416, 2013 WL 4516041, at *4 (W.D. La. Aug. 22, 2013); *Harmony Center,*

---

[60] R. Doc. 14 at ¶ 1.
[61] R. Doc. 14 at ¶ 16.
[62] R. Doc. 14 at ¶ 23.
[63] R. Doc. 14 at ¶ 26.
[64] R. Doc. 14 at ¶ 28.

*LLC v. Jindal*, CIV.A. 10-621, 2010 WL 4955167, at *3 (M.D. La. Nov. 30, 2010). "When a state or its arm is a named defendant, the Eleventh Amendment bars suits for money damages or injunctive relief unless the state has waived its immunity or Congress has abrogated the immunity by unequivocally expressing its intent to do so." *Prevo v. Pennington*, 16-CV-0230, 2016 WL 6816254, at *3 (W.D. La. Apr. 22, 2016) (citing *Cozzo*, 279 F.3d at 280-81). "Louisiana has not waived its immunity from suit in federal court." *Prevo*, 2016 WL 6816254, at *3 (*citing* La. R.S. 13:5106(A)) ("No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court."); *See also*, *Harmony Center*, *LLC,* 2010 WL 4955167, at *3 ("The Court does not find that Article 12, Section 10(A) of the Louisiana Constitution operates as a waiver of the State's or DCFS's Eleventh Amendment immunity."). Additionally, "Congress did not abrogate the immunity of the states when it enacted [42 U.S.C.] Section 1983." *Prevo*, 2016 WL 6816254, at *3 (citing *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)).

Because Darian asks this Court to impose fines and penalties against DCFS and eight DCFS employees in their official capacities, the Eleventh Amendment bars Darian's claims from being asserted in federal court. As such, the official capacity claims should be dismissed without prejudice, which will allow Darian "to attempt to assert them in a Louisiana state court that may be able to exercise jurisdiction." *Prevo*, 2016 WL 6816254, at *3 (citing *Warnock v. Pecos County*, *Tex.*, 88 F.3d 341, 343 (5th Cir. 1996) (concluding that claims barred by sovereign immunity can be dismissed only under Fed. R. Civ. P. 12(b)(1) without prejudice)). Because DCFS enjoys Eleventh Amendment immunity and there are no applicable exceptions to the immunity in this case, dismissal of the official capacity claims against DCFS and the eight DCFS employees is appropriate. *See, Schannette*, 2013 WL 4516041, at *5.

Insofar as Darian asks this Court to terminate or otherwise discipline the eight DCFS employees acting in their official capacities, Darian's claims are also barred by Eleventh Amendment immunity. The Fifth Circuit has held that, "The Eleventh Amendment does not protect state officials from claims for prospective relief when it is alleged that the state officials acted in violation of federal law." *Warnock*, 88 F.3d at 343 (citing *Ex parte Young*, 209 U.S. 123, 155-56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908); *Edelman v. Jordan*, 415 U.S. 651, 664, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974); *Brennan v. Stewart*, 834 F.2d 1248, 1252 (5th Cir. 1988)). However, the Supreme Court has clarified that declaratory relief is only available under the *Ex Parte Young* exception when there are ongoing or threatened violations of federal law. *Green v. Mansour*, 474 U.S. 64, 73, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985). Here, Darian appears to allege that the eight DCFS employees named as defendants in this case engaged in unconstitutional actions in the past, based upon their participation in the state court custody proceeding. To the extent Darian alleges that the actions of the eight DCFS employees violated federal law, Darian has not alleged that these actions are ongoing or that there is a threat of future violations of federal law. As such, Darian's claim for declaratory relief against the eight DCFS employees in their official capacities should be dismissed because they are barred under Eleventh Amendment immunity.

### b. Individual Capacity Claims

To the extent that Darian attempts to assert claims against the eight DCFS employees in their individual capacities, the DCFS employees are entitled to qualified immunity. "[S]tate child care workers such as the DCFS defendants are entitled to qualified immunity in the performance of discretionary, non-prosecutorial functions." *Schannette v. Doxey*, 2:12-CV-01416, 2013 WL 4516041, at *6 (W.D. La. Aug. 22, 2013) (citing *Stem v. Ahearn*, 908 F.2d 1, 5 (5th Cir. 1990)).

To hold the eight DCFS employees liable in this case, Darian "must pierce the qualified immunity that they inherently enjoy by demonstrating that the workers breached 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Stem*, 908 F.2d at 5 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). In determining whether a clearly established constitutional right was violated, the Supreme Court has instructed courts to focus on the law existing at the time of the alleged violation. *See, Doe v. State of La.*, 2 F.3d 1412, 1416 (5th Cir. 1993) (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).

Here, Darian asserts that, "The Court System and individual defendants, in their official capacity deprived Plaintiffs of liberty under color of law by depriving the parent of the fundamental right to the care, custody, and control of his two minor children without affording him even minimal procedural protections guaranteed by the United States Constitution."[65] Although phrased as an official capacity claim, Darian subsequently alleges that, "All members of this Court and DCFS, in their individual and official capacities, conspired to interfere with Plaintiff's First and Fourteenth Amendment Rights under 42 U.S.C. § 1985 and § 1986," and that, "Defendants, who under color of law, deprived Plaintiff of custody or visitation, in violation of the First and Fourteenth Amendments."[66]

While not a model of clarity, the Second Amended Complaint appears to allege that the eight DCFS employees, acting in their official and individual capacities, violated Darian's substantive due process liberty interest in the right to the care, custody and control of his minor children. However, Darian ignores the fact that his parental rights were impinged only after a judicial hearing and that the eight DCFS employees never physically removed Darian's children

---

[65] R. Doc. 14 at ¶ 1.
[66] R. Doc. 14 at ¶¶ 1-2.

from him or otherwise altered his parental rights under the law. *See, Stem v. Ahearn*, 908 F.2d 1, 6 (5th Cir. 1990). Further, in a trilogy of cases, the Fifth Circuit has held that social workers are entitled to qualified immunity for actions taken during the course of investigating allegations of child abuse.[67] *Schannette v. Doxey,* 2:12-CV-01416, 2013 WL 4516041, at *6 (W.D. La. Aug. 22, 2013); *See, Kiser v. Garrett*, 67 F.3d 1166, 1173 (5th Cir. 1995) ("[A]lthough a substantive due process right to family integrity has been recognized, the contours of that right are not well-defined, and continue to be nebulous, especially in the context of a state's taking temporary custody of a child during an investigation of possible parental abuse."); *Doe v. State of La.*, 2 F.3d 1412, 1416-18 (5th Cir. 1993) (rejecting plaintiff's argument that the defendants had violated his substantive due process liberty interest in the right to the care and custody of his children because the right was not clearly established at the time of defendants' actions); *Hodorowski v. Ray*, 844 F.2d 1210, 1217 (5th Cir. 1988) (concluding that the right to family integrity was too "nebulous" for the social worker defendants to have known that an attempt to obtain temporary custody of the children during an abuse investigation was a violation of a clearly established constitutional right). Thus, Darian has not shown that the eight DCFS employees violated a clearly established constitutional right based upon their involvement in the underlying state custody proceeding.

To the extent that Darian complains of "direct communications" between Loretta Hill and Judge Cashe which allegedly resulted in Judge Cashe revoking Darian's visitation rights, "[D]istrict courts in this circuit have consistently held that misrepresenting or deliberately withholding evidence during a child services investigation does not defeat qualified immunity." *Day v. Louisiana*, No. 2:12–CV–02844, 2013 WL 3894025, at *6 n.32 (W.D. La. July 25, 2013);

---

[67] In the Second Amended Complaint, Darian alleges that Rebecca Darian has committed various forms of child abuse against their minor children. *See*, R. Doc. 14 at ¶¶ 1, 20- 21. Darian also insinuates that Rebecca Darian sought to revoke Darian's visitation rights based on his alleged abuse of the children. *Id*. at ¶¶ 22-23, 25, 31-32.

*See, Schannette v. Doxey*, 2:12-CV-01416, 2013 WL 4516041, at *8 (W.D. La. Aug. 22, 2013) ("[B]ecause of the binding precedent *Hodorowski, Doe* and *Kiser*, this court cannot rule that the plaintiffs have shown that the law was sufficiently clear so that reasonable social workers such as the DCFS defendants would have known that they violated the plaintiffs' rights by temporarily taking the children into custody, pending a child abuse investigation, and making reports of abuse."); *Foley v. Texas Dep't of Family & Protective Servs.*, 1:12–CV–270, 2012 WL 6803598 (E.D. Tex. Nov. 14, 2012) (finding that qualified immunity protects a child services case worker who withheld evidence that would have cast doubt on the parents' wrongdoings); *Young v. Office of Child Safety*, CIV.A. 11–1417–LC, 2012 WL 7017793 (W.D. La Dec. 14, 2012) (noting that a child services employee may be entitled to qualified immunity where she allegedly produced false statements and tampered with evidence; the court ultimately ruled in her favor on other grounds). Further, the Fifth Circuit has held that, "[O]ffering adverse judicial testimony at a child-custody hearing does not implicate due process concerns and, further, it constitutes witness testimony that is absolutely immune from section 1983 liability." *Stem v. Ahearn*, 908 F.2d 1, 6 (5th Cir. 1990) (citation omitted).

In light of the foregoing authority, even taking all of Darian's allegations as true, Darian has not shown that the law was sufficiently clear that reasonable DCFS social workers, such as the eight DCFS employees named as defendants in this case, would have known that they violated Darian's "clearly established constitutional right" by providing information, even misinformation, regarding Darian's minor children to Judge Cashe during the state custody proceeding. Because Darian cannot meet his burden of showing that any of the eight DCFS employees violated his clearly established constitutional rights, the eight DCFS employees are entitled to qualified immunity with respect to Darian's individual capacity claims against them. In light of the

conclusion that Darian has not shown that the eight DCFS employee violated one of Darian's clearly established constitutional rights, the undersigned does not reach the second step of the analysis, which requires consideration of whether the actions of the eight DCFS employees were objectively reasonable. *See*, *Kiser v. Garrett*, 67 F.3d 1166, 1173 n.16 (5th Cir. 1995).

### 6. The Claims Against the State of Louisiana, the Livingston Parish Sheriff's Office and the East Baton Rouge Parish Sheriff's Office

Darian also appears to allege various claims against the State of Louisiana, the Livingston Parish Sheriff's Office ("LPSO") and the East Baton Rouge Parish Sheriff Office ("EBRPSO"), which are listed collectively as one defendant in the Second Amended Complaint.[68]   However, Darian does not make any specific allegations with respect to these four entities, and instead asserts the following:

> Defendants have established policies, procedures, precedents, and common practices that deny Plaintiffs and other parents of fundamental rights and protections by stripping one parent of physical and legal custody without a full and prompt hearing, in clear violation of the 14th Amendment under color of law.  Each Defendant has colluded to deny Plaintiffs of many Civil Liberties, by recklessly abandoning principal duties of their respective positions, through coercion, fraud, misconduct, and intentional malicious misinformation and disinformation, with purpose to injure, delay, and substantiate factless preconclusions [sic] regarding Plaintiffs.[69]

With respect to the LPSO and EBRPSO, the only reference made to either entity is Darian's assertion that during a domestic dispute on April 10, 2016, Rebecca Darian called the LPSO, "with false claims of physical abuse.  No evidence was revealed, so deputies departed."[70]  The prayer for relief similarly contains a general request for declaratory, injunctive, and equitable relief "against all Defendants for their contribution by actions or inactions, to deny Plaintiffs' parental rights

---

[68] R. Doc. 14 at ¶ 5.
[69] R. Doc. 14 at ¶¶ 17-18.
[70] R. Doc. 14 at ¶ 22.

without a prompt and full hearing, based on gender and/or income bias" and "against Defendants, for their contribution by actions or inactions, to deny Plaintiffs' parental rights without equal consideration and protection afforded to the other parent."[71]  Like his request for relief against DCFS and the eight DCFS employees named as defendants, Darian asks that, "Sheriff's Office and involved agents be disciplined appropriately for refusal to follow local and Federal laws regarding child abuse reports."[72]

Darian's conclusory allegations, even if assumed to be true, fail to state any claim upon which relief can be granted against the State of Louisiana, the LPSO or the EBRPSO.  As an initial matter, the Second Amended Complaint contains no factual allegations against the State of Louisiana.[73]  Further, "The Eleventh Amendment to the United States Constitution bars suits in federal court by citizens of a state against their own state or a state agency or department." *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185–86 (5th Cir. 1986).  With respect to the EBRPSO and the LPSO, it appears well-settled in Louisiana that while sheriffs are amenable to suit, "a sheriff's office is not a legal entity capable of being sued."  *Cozzo v. Tangipahoa Par. Council--President Gov't*, 279 F.3d 273, 283 (5th Cir. 2002) (citing *Porche v. Saint Tammany Parish Sheriff's Office*, 67 F. Supp. 2d 631, 635 (E.D. La. 1999)); *See*, *Davis v. E. Baton Rouge Par. Sheriff's Office*, CIV.A. 08-C-708, 2010 WL 4962812, at *2 (M.D. La. Dec. 1, 2010) ("Under Louisiana law, the Sheriff's Office itself is a non-entity incapable of being sued.").  Thus, Darian's claims against the EBRPSO and the LPSO should be dismissed for failure to state a claim.

---

[71] R. Doc. 14 at p.7, ¶¶ 1-2.
[72] R. Doc. 14 at ¶ 28.
[73] *See*, R. Doc. 14 at ¶ 5.

## RECOMMENDATION

Following a *Spears* hearing in this matter and an opportunity for plaintiff, Andrew Darian, to submit an amended complaint, and a thorough review of the documentation submitted into the record, it is the **RECOMMENDATION** of the undersigned Magistrate Judge that this matter be **DISMISSED WITHOUT PREJUDICE** for lack of federal subject matter jurisdiction and/or failure to state a claim under 28 U.S.C. § 1915(e)(2)(B).

In light of the recommendation that this matter be dismissed without prejudice, **IT IS HEREBY ORDERED** that the pending Petition for Emergency Ex Parte Custody,[74] Motion to Recuse Judge Jeff Cashe and Move Case to District Court Re: Andrew Darian vs. Rebecca Darian,[75] and Motion to Disqualify Opposing Counsel Wyman Bankston[76] are **TERMINATED**.[77]

IT IS FURTHERED ORDERED that notice of this Report and Recommendation shall be sent to the plaintiff, Andrew Darian, at 8840 Beauvoir Ave., Denham Springs, LA 70706, by certified mail, return receipt requested.

Signed in Baton Rouge, Louisiana, on July 14, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[74] R. Doc. 7.
[75] R. Doc. 8.
[76] R. Doc. 9.
[77] To the extent that the United States District Judge rejects the recommendation contained in this Report and Recommendation, the Clerk's Office is directed to immediately revive these motions.